Peter J. Wilkin and Dorothy I. Wilkin v. Commissioner.Wilkin v. CommissionerDocket No. 2785-67.United States Tax CourtT.C. Memo 1969-130; 1969 Tax Ct. Memo LEXIS 168; 28 T.C.M. (CCH) 681; T.C.M. (RIA) 69130; June 25, 1969, Filed *168 S, a wholly owned subsidiary of W and a manufacturer of highly styled expensive wrought aluminum furniture, had incurred net operating losses of about $600,000 prior to its acquisition by K.K paid $235,000 for all of the stock of S, equal to the net book value of S's assets. At the time of its acquisition, S had recently begun to operate at a modest profit. Its profits, however, were not sufficient to absorb any substantial portion of its net operating loss carryovers. Shortly after the acquisition, K caused its wholly owned subsidiary C to be merged into S for the principal purpose of using S's net operating loss carryover to offset the income from C's profitable business. On S's return for its first fiscal year ending after its acquisition by K, S deducted its net operating loss carryover of approximately $600,000 from the combined income of C's business ($976,000) and S's business (35,000), resulting in a reduction of Federal income taxes of approximately $300,000. K acquired control of S for the principal purpose of avoidance of Federal income tax by securing the benefit of S's net operating loss as an offset against the income of its wholly owned subsidiary, C. Held: The Commissioner*169 correctly disallowed S's deduction of its net operating loss carryover under the provisions of section 269(a), I.R.C. 1964. We have carefully considered all the evidence in this record, consisting of both oral testimony and documentary evidence. We have particularly noted that the petitioner, himself, at no time testified that the transfer to him of the insurance policy was specifically agreed to be as a part of the redemption price of his stock. His testimony falls far short of a specific statement that it was understood between the parties at the time the oral agreement for the redemption of his stock was made that the insurance policy was to be transferred to him as part of the consideration of the transfer by him to the corporation of his common stock. Petitioner's testimony with respect to the oral agreement is as follows: Q. Mr. Wilkin, give the Court the nature of the discussions that you had with the other stockholders with reference to the purchase of your shares? A. Well, I was getting on toward sixtyfive (65) years and I wanted to retire and the other stockholders asked what kind of proposition I would have to them to buy my stock in this policy*170 and so forth. Well, I gave them just one proposition, two hundred fifty thousand dollars ($250,000.00) for my stock plus this insurance policy on which my wife was the beneficiary. Q. And what was the response of the stockholders at the time you made that offer? A. They verbally agreed to it. Petitioner further testified as follows: Q. What did the corporation, to your knowledge, what did the corporation owe you in 1963 prior to November, 1963? How much did you have coming from the corporation for the redemption of your shares, for the purchase price of your shares? A. Were there eighteen (18) shares left at that time? Q. Twenty-seven (27). A. Twenty-seven (27) - well, they owed a hundred fifty thousand dollars ($150,000.00) plus interest. This testimony in our opinion establishes only that at the time of petitioner's retirement, the corporation agreed to purchase his 45 shares of common stock for $250,000 and also agreed to transfer all rights in the insurance policy to him. This testimony does not support the conclusion that the transfer of the insurance policy was agreed to be a part of the purchase price of the stock. All of the documentary evidence clearly leads*171 to the conclusion that the purchase price of the stock was $250,000 and that the transfer of the insurance policy was not agreed by the parties to be as a part of the purchase price of the stock. The executive vice president and other minority stockholder of National Plywoods, Inc., came closer in his testimony to stating that the insurance policy was intended to be in partial payment for the surrender to the corporation by petitioner of his 45 shares of common stock of National Plywoods, Inc. His first testimony in this respect is as follows: At the conference we had the offer of the forty-five (45) shares of stock from Mr. Wilkin for two hundred fifty thousand dollars ($250,000.00) and the insurance policy; and it was agreed upon by Mr. Kerfin and myself. However, this witness also testified that he wrote and prepared the minutes of the meetings of the board of directors of National Plywoods, Inc., both at the regular and special meetings, and that the information in those minutes was correct. Those minutes show the purchase price of the stock to be $250,000. He also testified with respect to the original agreement for the purchase of petitioner's stock as follows: THE WITNESS: *172 He had a certificate for forty-five (45) shares until we made the first redemption at which time it was redeemed through the bank and we had to break it up because the arrangement was to, at first the arrangement was to buy in nine (9) share lots. So we made five (5) certificates for nine (9) shares each. THE COURT: And he turned in one and got fifty thousand dollars ($50,000)? 686 THE WITNESS: He turned in one and got fifty thousand dollars ($50,000). It therefore appears that even this witness's testimony, considered in its entirety, supports the conclusion that the agreement between petitioner and National Plywoods, Accts. payable $ 36,282.19 $ 29,033.84 $ 31,044.97 $ 32,562.74 redeemed for a cash payment of $250,000 and that the insurance policy would be transferred to him upon his retirement. This witness's testimony certainly does not support a conclusion that the transfer of the insurance policy was part of the purchase price of the stock. All of the documentary evidence of record leads unmistakably to the conclusion that the transfer of the insurance policy was not in partial payment for the stock. The issue here is entirely factual. We conclude that the preponderance*173 of the evidence supports the conclusion that the transfer of the insurance policy to petitioner was not in part payment for petitioner's stock. We therefore sustain respondent's determination. Decision will be entered for respondent. Bertram J. Wolf, for the petitioners. Lewis M. Porter, Jr., for the respondent. 682 SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1963 in the amount of $2,548.66. The only issue*174 for decision is whether the cash surrender value of an insurance policy assigned to petitioner Peter J. Wilkin by National Plywoods, Inc., of which corporation he had been vice president prior to his retirement in 1959, constituted ordinary income to petitioners to the extent of the cash surrender value of the policy or resulted in capital gain to petitioners. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Riverside, Illinois at the time of the filing of the petition in this case, filed a joint Federal income tax return for the calendar year 1963 with the district director of internal revenue, Chicago, Illinois. Their return was prepared on the cash receipts and disbursements method of accounting. Peter J. Wilkin (hereinafter referred to as petitioner when used in the singular) was vice president of National Plywoods, Inc., from 1934 until his retirement in 1959. National Plywoods, Inc., is a corporation organized under the laws of the State of Delaware. Prior to petitioner's retirement in 1959, there were outstanding 248 shares of common stock of National Plywoods, Inc., of which petitioner owned*175 45 shares. Of the remaining shares, 43 were owned by the executive vice president of the corporation and his wife, and the remaining shares were owned by the president of National Plywoods, Inc. In the spring of 1959 petitioner was approaching 65 years of age and decided that he wanted to retire. He decided that he would like to have National Plywoods, Inc., repurchase his 45 shares of stock at the time of his retirement. Looking toward his prospective retirement petitioner in the spring of 1959 discussed with the other two officer-stockholders of National Plywoods, Inc., his desire to have National Plywoods, Inc., buy his stock. On September 20, 1941, National Plywoods, Inc., had purchased an ordinary life insurance policy on petitioner's life in the face amount of $25,000. This policy was No. 5-455-250, issued by the Mutual Life Insurance Company of New York. Originally the corporation was designated as the beneficiary of the policy. On October 25, 1954, petitioner's wife, Dorothy I. Wilkin, was designated by National Plywoods, Inc., as the beneficiary of the policy but the corporation continued to retain all the rights under the insurance contract such as the right to assign*176 the policy, to change the designation of beneficiary, to receive the dividends, to borrow on the policy, and to surrender the policy for its cash value. About the time when petitioner reached his 65th birthday in May 1959, he made a proposition to the other two officer-stockholders of National Plywoods, Inc., that they buy his stock. Petitioner wanted $250,000 for his 45 shares of stock and also wanted the insurance policy on which his wife was beneficiary assigned to him. At the time of the discussion in May 1959, the other two officer-stockholders of National Plywoods, Inc., agreed to purchase petitioner's stock and also agreed that the insurance policy on which his wife was beneficiary would be assigned to him. On June 30, 1959, one month and a half after his 65th birthday, petitioner retired from National Plywoods, Inc. At the time of petitioner's retirement the executive vice president of National Plywoods, Inc., who was in charge of the fiscal affairs of the corporation, handed the life insurance policy on petitioner's life, on which petitioner's wife was beneficiary, to petitioner. In the fall of 1960, petitioner contacted the agent for the Mutual Life Insurance Company of*177 New York with respect to changing the policy to paid-up insurance and to having the rights retained by National Plywoods, Inc., assigned to him. In late December 1960, the agent effected a change of the policy to paid-up insurance and obtained and forwarded to National Plywoods, Inc., the papers which that corporation would need to have executed in order to transfer all rights in the policy to petitioner. At the annual meeting of the board of directors of National Plywoods, Inc., held on January 19, 1961, a resolution was unanimously adopted that, "the Corporation purchase from Peter J. Wilkin nine (9) shares of common capital stock for $50,000.00 and that the stock be carried as Treasury Stock on the books of the corporation until otherwise disposed of." 683 On February 9, 1961, petitioner surrendered his certificate representing 45 shares of stock of National Plywoods, Inc., and received five certificates, each for nine shares of common stock of National Plywoods, Inc. On February 15, 1961, petitioner transferred to National Plywoods, Inc., through the American National Bank and Trust Company of Chicago as escrowee one of the certificates for nine shares of its common stock*178 and received from the corporation through the escrowee a check for $50,000. Between the time of his retirement on June 30, 1959, and the first of 1961, petitioner had on several occasions called the president and executive vice president of National Plywoods, Inc., with respect to the corporation's agreement to purchase his stock. At some time, either during the discussions before petitioner's retirement or thereafter when petitioner discussed the matter with the other officer-stockholders of National Plywoods, Inc., the arrangement had been arrived at that the corporation would buy petitioner's stock in nine-share lots. Therefore, on February 15, 1961, when the $50,000 check of National Plywoods, Inc., was delivered to the American National Bank for petitioner's certificate of nine shares of stock of National Plywoods, Inc., the other four certificates representing nine shares each were turned over to the bank to be given to petitioner. At the annual meeting of the board of directors of National Plywoods, Inc., held on January 18, 1962, a resolution was adopted that, "that Corporation purchase nine (9) shares of Common Capital Stock in National Plywoods Incorporated from Peter*179 J. Wilkin for an amount of $50,000.00, said stock to be held by the Corporation as Treasury Stock until such time as other disposition is made." At a special meeting of the board of directors of National Plywoods, Inc., held on October 8, 1963, the following resolution was passed: RESOLVED: That National Plywoods Incorporated authorizes the assignment to Peter J. Wilkin of all rights in Policy #5-455-250 issued by the Mutual of New York on the life of Peter J. Wilkin. Under date of November 14, 1963, petitioner and National Plywoods, Inc., entered into an agreement entitled, "Escrow Agreement," which provided in part as follows: PETER J. WILKIN agrees to deposit with American National Bank and Trust Company of Chicago as Escrowee, certificates representing an aggregate of 27 shares of the common stock of National Plywoods, Inc., registered in his name and bearing assignments of said shares in blank with appropriate signature guarantees. National Plywoods, Inc. agrees to make the following deposits with said Escrowee: (1) On or before , 1963, the sum of $50,000.00 plus $4,500.00 interest in payment for 9 shares of National Plywoods, Inc. common stock. (2) On or before*180 February 15, 1964, the sum of $25,000.00 plus interest at the rate of 3% from February 15, 1963 on $100,000.00. (3) On or before February 15, 1965, the sum of $25,000.00 plus interest at the rate of 3% per annum on the unpaid balance. (4) On or before February 15, 1966, the sum of $25,000.00 plus interest at the rate of 3% per annum on the unpaid balance. (5) On or before February 15, 1967, the sum of $25,000.00 plus interest at the rate of 3% per annum on the unpaid balance. After the Initial deposit of $50,000.00 plus interest and for each additional $50,000.00 deposit plus interest, National Plywoods, Inc. shall be entitled to receive from the Escrow a certificate for 9 shares of National Plywoods, Inc. common stock. On November 18, 1963, National Plywoods, Inc., drew a check to the American National Bank and Trust Company in the amount of $50,000 in payment for nine shares of petitioner's stock and drew a check to petitioner for $4,500 as an interest payment. On June 15, 1964, National Plywoods, Inc., drew a $50,000 check to American National Bank and Trust Company in payment for nine additional shares of petitioner's stock and in February of 1966 drew an additional*181 $25,000 check and another $25,000 check was drawn in February of 1967 to complete payment for petitioner's stock. The company accrued and paid interest to petitioner with respect to the $250,000 or the remaining balance due thereon from the time of petitioner's retirement or sometime shortly thereafter. Between the date of petitioner's retirement and the date of the final payment for petitioner's stock, National Plywoods, Inc., declared some dividends, but no dividends were paid to petitioner. 684 Shortly after the special meeting of the board of directors held on October 8, 1963, at which the assignment by the corporation of the insurance policy on petitioner's life to petitioner was authorized, the corporation assigned all of its rights in the insurance policy to petitioner. At the time of the assignment the insurance policy was fully paid and had a cash surrender value of $11,961. The corporation paid all the premiums that were due and paid on the policy through the years and no portion of these premiums paid by the corporation was at any time reported as income by petitioner. The corporation never claimed deductions for the insurance premiums it paid with respect to the*182 policy. The corporation also carried insurance policies on the lives of its executive vice president and its president and paid the premiums on those policies and retained ownership of those policies. On the balance sheets of National Plywoods, Inc., none of the insurance policies on the lives of the officers was shown at any time as an asset. It was at the direction of the major stockholder of National Plywoods, Inc., that these policies were not shown as an asset of the corporation on its balance sheets. The page of the general ledger of National Plywoods, Inc., entitled, "Securities - Treasury Stock" showed an entry under date of September 30, 1961, of treasury stock of $50,000, an entry in 1962 of treasury stock of $50,000, and two entries in 1963 of treasury stock, one for $50,000 and one for $100,000. Thereafter various entries are shown in this account as amounts due on treasury stock until a final entry in February of 1967 showed the treasury stock as fully paid. On their joint Federal income tax return for the calendar year 1963 petitioners reported under long-term capital gains and losses two items. The first designated, "Nat. Plywoods, Inc." showed an acquisition date*183 of 1931, a date of sale in November 1963, and a gross sales price of $50,000 with a gain of $46,535. The second item reported under the schedule for long-term capital gains and losses was as follows: Kind of propertyDate acquiredDate soldGross salespriceCost or otherbasisGain or lossMutual of N. Y. #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/20/419/31/63$11,961.00None$11,961.00Respondent in his notice of deficiency increased the taxable income as reported on petitioners' return by the amount of $11,961 and decreased the resultant figure by the amount of $5,980.50 representing the amount reported by petitioners as long-term capital gain from receipt of the insurance policy which was includable in their taxable income. In his explanation respondent stated as follows: It has been determined that the cash surrender value of the life insurance policy assigned to you by National Plywoods Incorporated and reported by you as longterm capital gain in the amount of $11,961.00 is taxable to you in full as a dividend under the provisions of section 301 of the Internal Revenue Code of 1954. See contra adjustment (b) below. If it should be determined*184 that the $11,961.00 does not constitute a dividend, it is held as an alternative that this $11,961.00 represents compensation for past services and is taxable as ordinary income under the provisions of section 61(a)(1) of the Internal Revenue Code of 1954. Ultimate Finding of Fact The transfer to petitioner of the insurance policy carried on his life by National Plywoods, Inc., with Mutual Life Insurance Company of New York was not in partial payment for the redemption by National Plywoods, Inc., of petitioner's 45 shares of stock of that company. Opinion The issue here is purely factual. Neither party argues to the contrary. It is petitioners' contention that the testimony of the witnesses shows that the transfer to petitioner of the rights in the insurance policy carried on his life by National Plywoods, Inc., was in consideration for the transfer by petitioner to National Plywoods, Inc., of his common stock of that corporation and therefore the value of the insurance policy was a part of the redemption price of such stock. If the insurance policy were transferred to petitioner as part of the redemption price of his stock in National Plywoods, Inc. *185 , its 685 value would be a part of the total payments in redemption of petitioner's stock. Both parties recognize that the gain on the redemption of petitioner's common stock in National Plywoods, Inc., is properly treated as long-term capital gain. Respondent, however, contends that the evidence here shows that petitioner's stock in National Plywoods, Inc., was purchased by that corporation for $50,000 for each nine shares thereof. Respondent contends that a total amount of $250,000 was paid to petitioner by National Plywoods, Inc., in redemption of his stock, and that the agreement to transfer to petitioner the insurance policy, even if made at the same time the corporation agreed to purchase the stock, was not an agreement to transfer the policy as a part of the purchase price of the stock.